A09A2195. DUNAWAY et al. v. UAP/GA AG. CHEM., INC.

(687 SE2d 211)

MIKELL, Judge.

UAP/GA Ag. Chem., Inc. ("UAP"), an agricultural product supplier, filed suit against WLD Farms, Inc., Wendell S. Dunaway ("Dunaway"), and Dunaway Brothers, Inc. (collectively, "appellants") on a Real Estate Note (the "Note") executed by Dunaway and WLD Farms. Appellants disputed the amount of the debt and asserted claims of set-off and breach of contract. The trial court granted summary judgment as to appellants' liability under the Note and ordered arbitration of their remaining claims. The arbitrator entered an award concluding that appellants were not entitled to recover on their set-off claim. Appellants filed a motion to vacate the

arbitration award. The trial court denied the motion and entered final judgment in favor of UAP on the Note in the principal amount of $687,029.65, $541,245.70 in interest, and $184,241.29 in attorney fees. On appeal, appellants contend that the trial court erred by compelling arbitration of their set-off claim and by refusing to vacate the arbitration award on the ground that the arbitrator overstepped his authority. For reasons set forth below, we reject these assertions. In addition, appellants contend that the trial court should vacate the judgment as to Dunaway Brothers, Inc., because it was not a party to the Note. UAP concedes that issue. Accordingly, we affirm the judgment with direction that it be modified so as to release Dunaway Brothers, Inc., from liability. The relevant facts follow.

The business relationship between the parties that ultimately led to this suit involves consignment agreements entered into annually between 1998 and 2002 by UAP and Central Georgia Cooperative, Inc. ("CGC"). Under these contracts, CGC received a commission for selling UAP's inventory of agricultural products to farmers. Dunaway was CGC's president. CGC declared bankruptcy in 2001. WLD Farms, in which Dunaway was a principal, purchased CGC's assets. Dunaway personally guaranteed CGC's debts as well as those of WLD Farms. CGC also assigned all of its right, title and interest in any claims arising out of the consignment agreements to Dunaway and WLD Farms.

In 2002, Dunaway and WLD Farms executed the Note at issue in favor of UAP. The Note represented a negotiated sum and was a consolidation of the debt owed to UAP by all of the appellants and CGC. Appellants defaulted, and UAP filed suit on the Note in 2003, ultimately naming all three Dunaway entities as defendants. In their answer and counterclaim, as amended, appellants admitted that they had made no payments on the Note but claimed that UAP had breached its contracts with CGC. Appellants also asserted a set-off claim, contending that they were entitled to a credit for payments made to UAP by third parties. UAP filed a motion to dismiss the counterclaim and an alternative motion to compel arbitration. UAP also moved for summary judgment. In response, appellants conceded that they executed the Note but disputed the amount due thereunder. The trial court granted UAP's motion for summary judgment as to appellants' liability under the Note but denied it as to the amount of the debt.

Subsequently, the trial court ruled on UAP's motion to compel arbitration. The 2001 consignment agreement contained the following arbitration provision:

All controversies and claims, whether based on contract, tort or any other legal theory, arising out of or related to the

> business relationship between [CGC] and [UAP] . . . and the consignment agreements relating to the sales or consignment of agricultural products shall be resolved by arbitration pursuant and subject to the current commercial dispute rules and supervision of the American Arbitration Association. The duty to arbitrate shall extend to any officer, employee, agent or subsidiary making or defending any claim between the parties.

The trial court concluded that all of appellants' claims, "whether asserted as a set-off or as a counterclaim for damages," were subject to the arbitration provision, and thus granted the motion to compel.[1]

The arbitrator heard testimony and rendered an award, including findings of fact and conclusions of law, on August 19, 2008. As relevant to this appeal, the arbitrator determined that the set-off claim of Dunaway and WLD Farms was subject to arbitration and that those appellants were not entitled to an award of damages by way of set-off or counterclaim against the amounts they owed under the Note. Appellants filed a motion to vacate the arbitration award and for reconsideration of the order compelling arbitration. The trial court denied the motion and entered final judgment in favor of UAP. This appeal ensued.

1. Appellants first contend that the trial court erred by compelling arbitration of their set-off claim. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[2] Appellants concede that the arbitration provision was broad enough to require CGC, and its successors and assigns, to arbitrate claims arising under the various consignment agreements. They argue, however, that issues surrounding the accuracy of their own individual farm accounts with UAP were not subject to arbitration. Appellants further contend that the trial court did not perform its duty to determine the arbitrability of this issue. We disagree with these assertions.

"[T]he standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law."[3] The interpretation of the arbitration provision is a matter of law for

---

[1] The trial court erroneously concluded that all of the consignment agreements contained arbitration provisions. However, the arbitrator recognized the error and properly determined that the arbitration provision in the 2001 agreement governed all of the parties' business transactions.

[2] (Citation omitted.) *Pickle v. Rayonier Forest Resources*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006).

[3] (Citation omitted.) *Moore & Moore Plumbing v. Tri-South Contractors*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002).

the court to decide, and we review that decision de novo.[4] It is true, as appellants contend, that even where parties have entered into a valid arbitration agreement, the

> trial court must determine whether the claims covered by the agreement are actually arbitrable before submitting them to an arbitrator. [But] [i]n fulfilling this gatekeeping duty, the trial court "shall not consider whether the claim with respect to which arbitration is sought is tenable nor otherwise pass upon the merits of the dispute." OCGA § 9-9-4 (d).[5]

Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[6]

Contrary to appellants' contentions, the trial court fulfilled its gatekeeping duty when granting UAP's motion to compel. The order recites appellants' contentions that the claim was not arbitrable because the Note did not contain an arbitration provision and appellants were not parties to the original consignment agreements. The trial court also considered appellants' claim that UAP incorrectly applied charges to CGC's account and appellants' individual accounts, and that such overcharges were improperly included in the Note. The trial court then concluded as follows:

> Even though [appellants] did not sign the consignment contracts which contain the arbitration provision, the amount of the set-off due, if any, . . . is independent of the amount due under the [N]ote and dependent upon and must be determined in accordance with the written consignment contracts because the [appellants] are successors in interest to CGC.

This reasoning is sound. The arbitration provision at issue governs "[a]ll controversies and claims . . . arising out of or related to the business relationship between [CGC] and [UAP] . . . and the consignment agreements." The record shows that Dunaway and WLD Farms are successors in interest to all of the rights of CGC, including any claims against UAP, and that Dunaway personally guaranteed all of CGC's debt. The set-off claim against UAP is not a defense to the

---

[4] Id.

[5] (Citations omitted.) *Bryan County v. Yates Paving & Grading Co.*, 281 Ga. 361, 362 (638 SE2d 302) (2006).

[6] (Citation omitted.) *DiMambro-Northend Assoc. v. Blanck-Alvarez, Inc.*, 251 Ga. 704, 707 (1) (309 SE2d 364) (1983). Appellants do not challenge the arbitrator's conclusion that the issue of arbitrability was governed by the federal Arbitration Act, 9 USC § 1 et seq.

YALE LAW LIBRARY

amount owed under the Note but is a claim for affirmative relief.[7] Such claim arose out of the "business relationship" between CGC and UAP, and Dunaway and WLD Farms "succeeded" to the claim. As such, they are bound by the arbitration provision contained in the 2001 agreement.[8]

Moreover, by asserting a claim for affirmative relief, the Dunaway entities were estopped from avoiding arbitration of the set-off claim.[9] As found by the arbitrator, the set-off claim was inextricably interwined with the consignment agreements. The claim related to accounting errors or failures that occurred during the crop years covered by the consignment agreements, and the Note represented a compromise of the debt owed to UAP "by any and all of the . . . Dunaway related parties, including indebtedness related to the CGC warehouse and to the Dunaway[s'] farming operations." Appellants themselves contended that UAP incorrectly applied charges to both CGC's account and appellants' individual accounts. The Note included CGC's debts as well as those of the Dunaway entities and thus "related to the business relationship between [CGC] and [UAP]." Thus, even though the Dunaway entities did not sign the 2001 consignment agreement in their individual capacities, they were properly compelled to arbitrate the set-off claim.

2. Appellants next assert that the trial court erred in refusing to vacate the arbitration award on the ground that the arbitrator overstepped his authority by failing to award damages on their set-off claim. We disagree.

A party seeking to vacate an arbitration award on this ground must show that its rights were prejudiced by "[a]n overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made."[10] " 'Overstepping' like the other grounds for vacating arbitration awards is very limited in scope."[11] "A court will vacate an arbitrator's award on the basis that the arbitrator over-

---

[7] *Stewart v. Stewart*, 236 Ga. App. 348, 349 (1) (511 SE2d 919) (1999).

[8] See, e.g., *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 334-335 (2) (297 SE2d 222) (1982) (assignees of lease agreement acquired rights and obligations of original parties thereto).

[9] See, e.g., *LaSonde v. CitiFinancial Mtg. Co.*, 273 Ga. App. 113, 114-115 (1) (614 SE2d 224) (2005) (plaintiff who was a nonsignatory to promissory note containing an arbitration clause was estopped from avoiding arbitration where claims of both plaintiffs, including the signatory, were intertwined and dependent upon the note); *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 231-232 (3) (597 SE2d 470) (2004) (interdependent claims properly ordered to arbitration although co-defendant was not a signatory to contract containing an arbitration clause).

[10] OCGA § 9-9-13 (b) (3).

[11] (Citation and punctuation omitted.) *U. S. Intermodal &c. v. Ga. Pacific Corp.*, 267 Ga. App. 832, 833 (600 SE2d 800) (2004).

stepped his or her authority only where the arbitrator determines matters beyond the scope of the case and addresses issues not properly before him or her."[12]

In this case, appellants essentially contend that the arbitrator overstepped the authority given him by the trial court. Appellants argue that, because the trial court concluded on summary judgment that issues of fact remained as to the amount due under the Note, the arbitrator overstepped his authority by awarding no damages on the set-off claim. In addition, appellants argue that the arbitrator failed to consider their evidence on this claim, such that a "final and definite award" was not made. The record does not support these assertions. The trial court referred the set-off claim to the arbitrator for resolution, and it was within the arbitrator's authority to determine the merits of the claim.[13] The arbitrator thus acted consistently with the trial court's order. Moreover, the arbitrator's award reflects that the arbitrator considered appellants' evidence and produced a definite award. Specifically, the arbitrator found "that the evidence produced by [appellants] regarding the accounting and monetary damages was confusing, lacked any reasonable degree of certainty, and was largely speculative and conjectural." Based in part on this finding, the arbitrator concluded that appellants were not entitled to an award of damages. The arbitrator did not overstep his authority, and the trial court did not err in refusing to vacate the arbitration award on this ground.

3. Finally, appellants contend that the trial court erred in entering judgment against appellant Dunaway Brothers, Inc., because that party did not sign the Note. UAP concedes that Dunaway Brothers, Inc., should be released from the judgment on the Note. The trial court is thus directed to modify the judgment accordingly.

*Judgment affirmed with direction. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 20, 2009 — 

*Smith & Jenkins, Wilson R. Smith*, for appellants.
*Watson & Spence, Frank F. Middleton IV*, for appellee.

---

[12] (Citation omitted.) *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 299 Ga. App. 614, 620 (2) (683 SE2d 40) (2009). See, e.g., *Sweatt v. Intl. Dev. Corp.*, 242 Ga. App. 753, 756-757 (1) (531 SE2d 192) (2000) (arbitrator overstepped his authority by awarding actual damages even though they were not permitted by the contract at issue).

[13] See *Ralston v. City of Dahlonega*, 236 Ga. App. 386, 388 (3) (512 SE2d 300) (1999).