**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0061. MILLER v. GGNSC ATLANTA, LLC.

A13A0062. GGNSC ATLANTA, LLC v. MILLER.

BRANCH, Judge.

These cross appeals require us to determine the enforceability of a consumer arbitration agreement that was executed as part of a nursing home admissions process. Specifically, we must decide whether the unavailability of the selected arbitral forum (in this case, the National Arbitration Association or "NAF") renders the agreement impossible to enforce and therefore void. For the reasons explained herein, we answer that question in the affirmative. We therefore vacate the order of the trial court in Case No. A13A0061 which, although it denied the motion of the defendant/appellee to dismiss, compel arbitration, and stay discovery, nevertheless found that the arbitration

agreement was enforceable. We remand Case No. A13A0061 for proceedings consistent with this opinion. We dismiss as moot the appeal in Case No. A13A0062.

The facts relevant to this appeal are undisputed. In January, 2010, Michael Miller was admitted to Golden Living Center-Northside ("GLC-Northside"),[1] a nursing home and convalescent center located in Atlanta. At the time of his admission to GLC-Northside, Miller executed a number of forms contained in the Golden Living "admissions packet." One of those forms was a "Resident and Facility Arbitration Agreement." The Arbitration Agreement provides, in relevant part:

It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereinafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident *shall be resolved exclusively* by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility,[2] *in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement*, and not by lawsuit or

---

[1] GLC-Northside is operated by GGNSC Atlanta, LLC, the named defendant/appellee in Case No. A13A0061 and the cross-appellant in Case No. A13A0062.

[2] The "Facility" is GLC-Northside.

resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, U.S.C. Sections 1-16.

. . .

In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective.

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation . . . all persons whose claim is derived through or on behalf of the Resident, including any . . . child, guardian, executor, legal representative, administrator, or heir of the Resident. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

(Emphasis supplied.)[3]

Rule 1 (A) of the NAF Code of Procedure in effect at the time the respective arbitration agreements were executed provides, in relevant part:

---

[3] Footnote 1 of the arbitration agreement states that "[i]nformation about the National Arbitration Forum including a complete copy of the Code of Procedure, can be obtained from the Forum," and it provides the telephone and fax numbers for the NAF, as well as the address for the NAF website.

Parties who contract for or agree to arbitration provided by the [NAF] or this Code of Procedure agree that this Code governs their arbitration proceedings, unless the Parties agree to other procedures. This Code shall be deemed incorporated by reference into every Arbitration Agreement[] which refers to the National Arbitration Forum . . . or this Code of Procedure, unless the Parties agree otherwise. *This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum.*

(Emphasis supplied.)

The NAF is headquartered in Minneapolis, Minnesota. In July 2009, the Minnesota Attorney General filed a complaint against the NAF and related entities alleging violations of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.69), the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.44), and the Minnesota False Statements in Advertising Act (Minn. Stat. § 325F.67).[4] The complaint sought civil penalties as well as an injunction barring the NAF from engaging in those practices of the organization that allegedly violated the

---

[4] The complaint alleged, among other things, that NAF was affiliated with a New York hedge fund that was owned by one of the country's major debt collection enterprises; that the Forum marketed its arbitration services to consumer creditors, such as credit card companies and auto finance agencies, as a "collections tool"; and that in marketing its services, NAF made a number of misrepresentations, failing to show that it was aligned with creditors against consumers.

relevant statutes. On July 17, 2009, the parties entered into a consent judgment under which the NAF agreed that it would not administer, process, or "[i]n any manner participate in" any consumer arbitration[5] filed on or after July 24, 2009.[6]

In April 2011, Miller filed suit in the State Court of Fulton County against GLC-Northside and related entities.[7] Relying on the Arbitration Agreement, Golden Living filed a motion to dismiss, to compel arbitration, and to stay discovery. Miller opposed the motion, arguing that the designation of the NAF as the arbitral forum was an integral term of the Arbitration Agreement, and that the unavailability of either the NAF or its Code of Procedure rendered the contract impossible to enforce and therefore void. He further argued that the Arbitration Agreement should not be

---

[5] The NAF Code of Procedure defines "consumer" to include any individual whose claim against a business or entity arises "[f]rom a transaction or event involving any aspect of healthcare." The parties do not dispute that under the terms of the Arbitration Agreement, the current actions would be considered consumer arbitrations.

[6] We note that Golden Living provided Miller the arbitration agreement at issue for his signature almost six months after the NAF had entered into the consent order agreeing not to conduct any consumer arbitrations.

[7] Miller's complaint asserts claims for professional negligence, violations of the Georgia Bill of Rights for residents of long term care facilities, negligence per se (based on violations of state and federal Medicare regulations), negligence, failure to provide sufficient and proper staffing, and punitive damages.

5

enforced because it is substantively and procedurally unconscionable. Finally, Miller asserted that he was legally incompetent to execute the Arbitration Agreement, because at the time of his admission to GLC-Northside he had just undergone two major surgeries, was in significant pain, and was under the influence of narcotic pain killers.

The trial court found that the Agreement was not impossible to perform and that it was neither substantively nor procedurally unconscionable. . The court nevertheless denied the motion to compel arbitration, finding that there exists a jury question as to whether Miller was legally competent to execute the Agreement. Miller then sought a certificate of immediate review, to allow him to appeal the trial court's rulings as to impossibility and unconscionability. The trial court granted that certificate, and this Court granted Miller's application for an interlocutory appeal. In Case No. A13A0061, Miller appeals the trial court's rulings that the Arbitration Agreement is not void because of either impossibility or unconscionability. GLC-Northside has filed a cross-appeal in Case No. A13A0062, in which it challenges the trial court's finding that a jury question exists as to Miller's competency to execute the Arbitration Agreement. We now turn to the merits of these appeals.

6

1. "The question of whether a valid and enforceable arbitration agreement exists . . . represents a question of law." (Citation and footnote omitted.) *Yates v. CACV of Colorado, LLC*, 303 Ga. App. 425 (693 SE2d 629) (2010). We therefore review de novo a trial court's order granting or denying a motion to compel arbitration. *Dunaway v. UAP/GA AG. Chem.*, 301 Ga. App. 282, 284-285 (1) (687 SE2d 211) (2009).

*Case No. A13A0061*

2. We first address the question of whether the Arbitration Agreement is void because of impossibility of performance – i.e., because neither the NAF, as the chosen arbitral forum, nor, consequently, its Code of Procedure is available to the parties. We begin our analysis by noting that a written agreement to arbitrate is by definition a contract. In deciding the validity of such an agreement, therefore, we apply the usual rules of Georgia law regarding the construction and enforcement of contracts. See *Yates*, supra at 430 (1). The normal defenses to enforcement of a contract apply to arbitration agreements, including the defense of impossibility. See *Triad Health Mgmt. of Ga., III v. Johnson*, 298 Ga. App. 204, 209 (3) (679 SE2d 785) (2009) ("generally applicable contract defenses . . . may invalidate arbitration agreements to which the FAA applies") (citation omitted); *Kothari v. Tessfaye*, 318 Ga. App. 289,

7

294-295 (1) (a) (i) (733 SE2d 815) (2012) (recognizing that impossibility of performance is a contract defense); OCGA § 13-3-5 (impossible conditions in a contract are "void and are binding upon no one"). Here, Miller argues that because the Arbitration Agreement designates the NAF as the parties' exclusive arbitral forum, and because the NAF is legally barred from conducting consumer arbitrations, the agreement is impossible to perform. We agree.

Under Georgia law, the cardinal rule of contract construction is to ascertain the intent of the parties, as evidenced by the language of the contract. *Garrett v. So. Health Corp. of Ellijay*, 320 Ga. App. 176, 182 (1) (739 SE2d 661) (2013). And "[i]f the terms of a contract are plain and unambiguous, the contractual terms alone determine the parties' intent." (Citation omitted.) Id. Accordingly, while we recognize the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (4) (c) (103 SCt 927, 74 LE2d 765) (1983), that policy does not allow us to rewrite the parties' agreement. Rather, the law obligates us to enforce the plain terms of the contract into which the parties entered. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (115 SCt 1212, 131 LEd2d 76) (1995) (when applying the Federal Arbitration Act, courts must still

"ensure that private agreements to arbitrate are enforced according to their terms")
(citation and punctuation omitted).

Golden Living argues that the Arbitration Agreement is not impossible to enforce because the contract is governed by the Federal Arbitration Act ("FAA"), and section 5 of that statute[8] permits a court to appoint a substitute arbitrator. Although this issue has never been addressed by a Georgia appellate court, the United States Court of Appeals for the Eleventh Circuit has previously held that where the parties' chosen arbitral forum has failed or is otherwise unavailable, section 5 of the FAA may apply, in some circumstances, to allow the naming of a substitute arbitrator. *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (II) (A) (3) (11th Cir. 2000).[9]

---

[8] Section 5 of the FAA provides: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." 9 USC §5.

[9] We note that *Brown* involved an arbitration agreement that required the arbitration to be conducted "under the Code of Procedure of the National Arbitration Forum." *Brown*, supra at 1220 (I). The entity in question in *Brown*, however, was not the same entity that is involved in the current case. Rather "the National Arbitration

*Brown* stated that where the language of the agreement reflects that the choice of arbitral forum "is an integral part of the agreement to arbitrate," then the agreement will be considered void if the forum is unavailable. Id. See also *Reddam v. KPMG, LLP*, 457 F3d 1054, 1060 (9th Cir. 2006) (*overruled on other grounds as recognized in Atlantic Nat. Trust LLC v. Mt. Hawley Ins. Co.*, 621 F3d 931, 940 (B) (9th Cir. 2010)) ("when a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act.") If, on the other hand, the agreement shows that the selection of a particular forum was merely an "ancillary logistical concern," section 5 will apply and a substitute arbitrator may be named. *Brown*, supra at 1222 (II) (A) (3).

The "integral term vs. ancillary logistical concern" test articulated in *Brown* has been adopted by the large majority of jurisdictions confronted with the question of whether section 5 of the FAA allows a court to name a substitute arbitrator where the parties' designated forum has failed or is otherwise unavailable.[10] This test is

Forum" mentioned in *Brown* was defunct by the time the plaintiff filed his claim in the district court. Id. at 1220-1221 (I).

[10] See *See Khan v. Dell Inc.*, 669 F3d 350, 354 (3rd Cir. 2012); *Reddam*, 457 F3d at 1060; *Meskill v. GGNSC Stillwater Greeley, LLC*, 862 FSupp2d 966, 974 (D. Minn. 2012); *Diversicare Leasing Corp. v. Nowlin*, 2011 WL 5827208, at *5 (W. D. Ark. 2011); *Klima v. Evangelical Lutheran Good Samaritan Society*, 2011 WL

10

consistent with Georgia contract law, in that it focuses on and requires a court to give effect to the intent of the contracting parties, as evidenced by the contract's language. This test is also consistent with the provisions of the FAA, which requires courts to enforce arbitration agreements according to their terms. See 9 U.S.C. §§ 2, 3, 4. For these reasons, we adopt the "integral term vs. ancillary logistical concern" test for determining whether an arbitration agreement becomes unenforceable where the arbitral forum designated therein is unavailable for any reason.

The question before us, therefore, is whether the Arbitration Agreement reflects that the selection of the NAF as the arbitral forum was integral to that agreement. In other words, does the language of the Arbitration Agreement indicate that the parties

---

5412216, at *3 (D. Kan. 2011); *Ranzy v. Extra Cash of Texas*, 2010 WL 936471, at *4-5 (S. D. Tex. 2010), aff'd *Ranzy v. Tijerina*, 393 FedAppx. 174 (5th Cir. 2010); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith*, 742 FSupp 1359, 1364 (N. D. Ill. 1990); *Carr v. Gateway, Inc.*, 944 NE2d 327, 333 (Ill. 2011); *Rivera v. American Gen. Fin. Svcs.*, 259 P.3d 803, 811-812 (N. M. 2011); *Grant v. Magnolia Manor-Greenwood*, 383 S. C. 125 (678 S.E.2d 435) (S. C. 2009); *Riley v. Extendicare Health Facilities*, 826 NW2d 398, 405 (Wis. App. 2012); *Licata v. GGNSC Malden Dexter LLC*, 2012 WL 1414881, *8 (Mass. Super. 2012); *Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 218-19 (Pa. Super. 2010). We note that the majority of these cases addressed whether an arbitration agreement designating the NAF as the arbitral forum was enforceable even though the NAF was no longer available to conduct the arbitration. As noted infra at note 13, the majority of these courts reached the same conclusion that we reach here, namely that the unavailability of the NAF and its Code of Procedure renders the Arbitration Agreement unenforceable.

11

intended to arbitrate their claims only if the NAF was available to administer that arbitration? For reasons explained below, we find that it does.

As other courts confronted with this issue have found, "an arbitration agreement's express designation of a single arbitration provider weighs in favor of a finding that the designated provider is integral to the agreement to arbitrate." *Rivera v. American Gen. Financial Svcs.*, 150 N. M. 398, 259 P3d 803, 812-813 (II) (C) (N. M. 2011). See also *Smith Barney, Inc. v. Critical Health Systems of North Carolina*, 212 F3d 858, 862 (II) (4th Cir. 2000) ("Where the parties have agreed explicitly to settle their disputes before particular arbitration fora, that agreement must control.") Here, the Arbitration Agreement provides that any disputes between the parties "*shall be resolved exclusively* through binding arbitration" conducted "in accordance with the National Arbitration Forum Code of Procedure, *which is hereby incorporated into this Agreement*, . . . ." (Emphasis supplied.) And the NAF's Code of Procedure, in turn, provides that only the NAF may administer that Code.[11] The Arbitration

---

[11] The restriction imposed by NAF Rule 1 (A) appears to be a unique feature of the NAF Code. We take judicial notice of the rules of both the American Arbitration Association ("AAA") and JAMS, which are publicly available on the organizations' respective web sites. See *In the Interest of D. W.*, 318 Ga. App. 725, 728 (2) (734 SE2d 543) (2012) (judicial notice may be taken of facts which are beyond dispute and "are readily ascertainable by reference to some reliable source") (citation and punctuation omitted). Neither set of rules provides that they may be administered

12

Agreement's use of the mandatory "shall" and the word "exclusively," together with its express incorporation of the NAF Code, indicates that the parties did not have a general agreement to arbitrate; rather, they contracted to arbitrate only before the NAF. Id. (holding that the arbitration agreement's use of terms such as "shall" and "exclusively" and its incorporation of the NAF Code, showed that the parties have "evince[d] [an] intent to arbitrate exclusively before a particular arbitrator, not simply an intent to arbitrate generally") (citation and punctuation omitted). Accordingly, we find that the designation of the NAF as the arbitral forum is an integral term of the

---

exclusively by the entity that created them. See www.adr.org/commercial (AAA Rules); www.jamsadr.com/rules-comprehensive-arbitration (JAMS Rules). We further note that the NAF Code differs in many significant respects from the special rules promulgated by both the AAA and JAMS for use in arbitrations involving consumer disputes, and which would apply to an arbitration arising out of treatment of a resident in a nursing home. See www.adr.org/consumer; www.jamsadr.com/rules-minimum-consumer-standards. These unique features of the NAF Code further support our conclusion, discussed infra, that arbitration before the NAF is an integral term of the contract at issue. See *Carr*, supra at 330 (finding the selection of NAF was an integral term of an arbitration clause because that forum "has a very specific set of rules and procedures that has implications for every aspect of the arbitration process") (citation and punctuation omitted). See also *Singleton v. Grade A Market*, 607 FSupp2d 333, 339 (D. Conn. 2009) (finding the designation of a specific arbitral forum was an integral term of the agreement to arbitrate where the rules of the selected forum would substantively impact the arbitration process and perhaps the outcome); *Grant*, supra at 439 ("[w]here designation of a specific arbitral forum has implications that may substantially affect the substantive outcome of the resolution, we believe that it is neither 'logistical' nor 'ancillary'") (citation omitted).

contract at issue. See *Riley* supra at 411 (the arbitration agreement's incorporation of the NAF Code "draws NAF into the Agreement to a degree as integral as the agreement to arbitrate itself"); *Carideo v. Dell, Inc.*, 2009 WL 3485933, *5 (II) (B) (W. D. Wash. 2009) (finding that the availability of the NAF was an integral term where the arbitration clause "designates NAF's code of procedure as the applicable rules[,]" a fact that "underscores NAF's importance to the arbitration clause").

The conclusion that the availability of the NAF Code (and by extension the NAF) is integral to the agreement is further supported by Rules 48 (D) and (E) of the NAF Code, which provide:

> D. The Director or Arbitrator may decline the use of arbitration for any dispute, controversy, [or] Claim . . . that is not a proper or legal subject matter for arbitration *or where the agreement of the Parties has substantially modified a material portion of the Code. If the Parties are denied the opportunity to arbitrate a dispute, controversy, or Claim before the Forum, the Parties may seek legal and other remedies in accord with applicable law*.
>
> E. *In the event of a cancellation of this Code, any Party may seek legal and other remedies* regarding any matter upon which an Award or Order has not been entered.

(Emphasis supplied.)

That part of Rule 48 (D) which provides that the NAF may decline to arbitrate the parties' claims if their agreement has "substantially modified a material portion of the Code" shows that unless the NAF Code *in its entirety* applies to the arbitration, the parties' agreement to arbitrate may be unenforceable. This language demonstrates, therefore, that both the NAF and its Code are an essential part of the agreement to arbitrate. See *Carr*, supra at 336-337 (a reading of the NAF Code in its entirety "indicates that the designation of the NAF as the arbitral forum is integral to the agreement"); *Riley*, supra at 409 ("[t]he NAF Rules of Procedure, in turn, confirm that the [a]greement's designation of the application of the NAF rules is integral to that agreement").

Moreover, both Rule 48 (D) and (E) make clear that if the parties cannot arbitrate pursuant to the NAF Code (which itself requires arbitration by the NAF), they are not obligated to arbitrate in an alternate forum. Rather, if the NAF is unavailable, the parties are free to seek legal remedies – i.e., to file a traditional lawsuit. See BLACK'S LAW DICTIONARY ___ (9th ed. 2009) (defining "legal remedy" as "[a] remedy historically available in a court of law, as distinguished from a remedy historically available only in equity").

In spite of the foregoing, Golden Living argues that because the Arbitration Agreement contains a severance clause, we should find that the designation of the NAF as the arbitral forum is not an integral term of that Agreement. Specifically, Golden Living contends that this clause allows a court to sever from the Arbitration Agreement the requirement that NAF administer the arbitration. The court could then employ section 5 of the FAA to appoint a substitute arbitrator, who would conduct the arbitration pursuant to the NAF Code.[12] In support of this argument, Golden Living cites two cases from South Dakota, *Wright v. GGNSC Holdings LLC*, 808 NW2d 114, 120 (S.D. 2011) and *Jones v. GGNSC Pierre LLC*, 684 FSupp2d 1161, 1167–68 (D.S.D. 2010), both of which involved the interpretation of an arbitration agreement

---

[12] We note that Golden Living's argument that we should allow a non-NAF arbitrator to apply the NAF Code of Procedure assumes that there remains in effect an NAF Code applicable to consumer arbitrations. That proposition is doubtful, at best. The NAF rules in the record are dated August 1, 2008. NAF is prohibited by court order, however, from arbitrating any consumer claim that is filed after July 24, 2009. Given that NAF is now barred from administering consumer arbitrations, other courts have found that "there cannot be any NAF rules that remain 'in effect' for administering consumer disputes." *Rivera*, supra at 814, citing *Carideo*, supra at *5 ("because NAF does not arbitrate consumer disputes filed after July 24, 2009, there are simply no NAF rules currently in effect for such arbitrations."). See also *Riley*, 826 NW2d at 410 ("even if the court were to appoint a substitute arbitrator, no applicable NAF rules exist for the substitute arbitrator to apply").

that is identical to the one at issue. *Wright*, supra at 116, note 1; *Jones*, supra at 1163. We find the reasoning of these cases, however, wholly unpersuasive.

First, neither of these opinions acknowledges or applies the cardinal rule of Georgia law regarding contract construction, which is to ascertain the intent of the parties as evidenced by the terms of the written agreement. Indeed, neither opinion contains any discussion regarding the intent of the parties or how the language of the arbitration agreement reflects that intent. Moreover, both courts articulate what appears to be a deliberate decision to disregard the plain language of Rule 1 (A) of the NAF Code. See *Wright*, supra at 120 (acknowledging that Rule 1 (A) "provide[s] that only the NAF [can] 'administer' its Code of Procedure," but finding "that point of little significance"); *Jones*, supra at 1167-1168 (holding that because the contract only referenced the NAF Code, as opposed to the NAF itself, the selection of NAF as the arbitral forum was merely "implied"). In addition to ignoring the plain language of Rule 1 (A), neither opinion even acknowledges the existence of, much less gives effect to, the relevant language of Rules 48 (D) and 48 (E). Regardless of what the law may be in South Dakota, however, we are not at liberty to ignore the specific terms of the parties' written agreement and "rewrite or revise a contract under the guise of construing it." (Citation and punctuation omitted.) *Rabun & Assoc. Constr. v. Berry*,

17

276 Ga. App. 485, 487 (1) (623 SE2d 691) (2005). See also *Grange Mut. Cas. Co. v. Fulcher*, 306 Ga. App. 109, 111 (701 SE2d 547) (2010) ("Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of" which party benefits.) (footnote omitted).

Additionally, Golden Living's argument that the existence of a severance clause can render any contract term – including the designation of an arbitrator – nonessential misapprehends Georgia law regarding severable contracts. Like other aspects of contractual interpretation, "[t]he issue of the severability of a contract is determined by the intention of the parties, as evidenced by the terms of the contract." (Citations and punctuation omitted.) *Horne v. Drachman*, 247 Ga. 802, 805 (2) (280 SE2d 338) (1981). Thus, *before* deciding whether a contract provision is severable, a court must determine whether that provision is integral to the contract. And the severance of an essential contract term "is not allowed," even where the contract contains a severance clause. *AMB Property, L.P. v. MTS, Inc.*, 250 Ga. App. 513, 515 (551 SE2d 102) (2001). See also *Nolley v. Maryland Cas. Ins. Co.*, 222 Ga. App. 901, 904 (4) (476 SE2d 622) (1996) (in determining whether a contract provision is severable, the question is whether the provision "is of the essence of the contract") (citation and

18

punctuation omitted). Here our analysis shows that the designation of the NAF as the arbitral forum is an integral term of the agreement at issue; accordingly, we are not at liberty to sever that provision.

As the foregoing demonstrates, the Arbitration Agreement by its terms provides that the procedural law governing the arbitration proceedings would be the NAF Code; that the arbitrators would be members of the NAF, who are the only people authorized to administer and apply the NAF Code; and that in the absence of the NAF and/or the NAF Code as written, the parties would not be obligated to arbitrate their disputes but instead would be free to seek legal remedies. Accordingly, we find that the availability of the NAF Code of Procedure and, consequently, the availability of NAF as an arbitral forum, are integral to the Arbitration Agreement. "To hold otherwise would require us to impose a strained construction on a straightforward agreement. It is far better to interpret the agreement based on what is specified, rather than attempt to incorporate other remote rules by reference." (Citation omitted.) *Smith Barney*, supra at 862. As one court has explained, "[t]he unavailability of [the] NAF as arbitrator presents compounding problems that threaten to eviscerate the core of the parties' agreement. To appoint a substitute arbitrator [,who would have to apply procedural rules other than the NAF Code,] would constitute a wholesale revision of

19

the arbitration clause." *Carideo*, supra at *6. We therefore find that section 5 of the FAA does not apply in this case, as that law would "allow a court to select and impose on the contracting parties a substitute arbitrator inconsistent with the plain terms of their contract." *Rivera*, supra at 815. Rather, the unavailability of the NAF and its Code render the Arbitration Agreement impossible to enforce.[13]

3. In light of our holding in Division 2, we need not address whether the trial court erred in finding that the Arbitration agreement was neither substantively nor procedurally unconscionable. Given our finding that the Arbitration Agreement is

unenforceable, we vacate the order of the trial court and remand this case for proceedings consistent with this opinion.

*Case No. A13A0062*

4. In this case, GLC-Northside has appealed the trial court's finding that a triable question of fact exists as to Miller's competency to execute the Arbitration

---

[13] We note that our holding is in accord with the majority of courts that have interpreted substantially similar agreements. See *Ranzy,* 393 FedAppx at 176; *Green v. U. S. Cash Advance Illinois*, ___ FSupp2d ___, 2013 WL 317046 at *7 (N. D. Ill.) (slip op., decided January 25, 2013); *Klima*, supra at *5-6; *Carideo*, supra at *6; *Rivera*, 259 P3d at 815; *Carr*, supra at 336-337; *Riley*, supra at 410-411; *Geneva-Roth, Capital v. Edwards*, 956 NE2d 1195, 1203 (Ind. App. 2011); *Stewart*, supra at 219; *Licata*, supra at *8. But see *Meskill*, supra at 975); *Jones*, supra at 1169; *Wright*, supra at 121.

Agreement. Based on Division 2 of this opinion, this appeal is dismissed as moot. See *Clark v. State*, 301 Ga. App. 354, 355 (687 S.E.2d 593) (2009) (as a general rule, if a party "would receive no benefit by reversal of the case, it is moot") (citation and punctuation omitted). See also OCGA § 5-6-34 (d) ( "[n]othing in this subsection shall require the appellate court to pass upon questions which are rendered moot").

*Judgment vacated and case remanded in Case No. A13A0061; appeal dismissed as moot in Case No. A13A0062. Phipps, C. J. and Ellington, P. J., concur.*