**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 26, 2014**

# In the Court of Appeals of Georgia

A13A2129. SUNBRIDGE RETIREMENT CARE ASSOCIATES
LLC. et al. v. SMITH et al.

BARNES, Presiding Judge.

We granted Sunbridge's[1] application for interlocutory review of the trial court's

denial of its motion to stay proceedings pending arbitration and to compel

arbitration.[2] On appeal, Sunbridge contends that the trial court erred in denying its

motion to stay proceedings and to compel arbitration because, among other things,

the Federal Arbitration Act ("FAA") mandates arbitration and the agreement at issue

is not void for impossibility because of the unavailability of the National Arbitration

---

[1] The appellants are Sunbridge Retirement Care Associates, LLC, dba
Cartersville Heights Care and Rehabilitation Center, Sunbridge Healthcare LLC, fka
Sunbridge Healthcare Corporation, Harborside Healthcare Corporation, Sun
Healthcare Group, Inc., Renee D. Roberts fka Renee D. Knox, Holly Buchanan, and
Gladys Sone. They will be referred to collectively as "Sunbridge."

[2] The trial court granted Sunbridge a certificate of immediate review.

Forum ("NAF") as the designated arbitral forum. Upon our review and for the reasons that follow, we affirm.

The relevant undisputed facts establish that on May 27, 2009, Emma Wingo gave her daughter, Vickie Smith, a general power of attorney. On November 24, 2009, Smith enrolled Wingo at Cartersville Heights Care and Rehabilitation Center, a Sunbridge facility. As part of the admission process, Smith signed documents as her mother's legal representative, including an arbitration agreement that provided in pertinent part, that

> [a]ny and all claims or controversies arising out of or *in any way* relating to this Agreement, the Admission Agreement or any of the Resident's stays at this Facility . . . whether or not relating to medical malpractice . . . whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, regardless of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration.[3] (Emphasis in original.)

The agreement further provided that

> [t]he arbitrator *shall apply the NAF's Code of Procedure* (in effect as of May 1, 2006) unless otherwise stated in this Agreement. The parties'

---

[3] The parties stipulated to the application of the FAA to the agreement.

selection of the NAF Code of Procedure to govern the arbitration proceedings is not tantamount to the selection of NAF as the administrator of the arbitration. . . . The Parties hereby opt out of NAF rules (45 regarding indigents and 43 regarding appeals and judicial review). (Emphasis supplied.)

Rule 1 (A) of the 2006 NAF Code of Procedure provides, in relevant part that:

Parties who contract for or agree to arbitration provided by the [NAF] or this Code of Procedure agree that this Code governs their arbitration proceedings, unless the Parties agree to other procedures. This Code shall be deemed incorporated by reference in every Arbitration Agreement[ ] which refers to the National Arbitration Forum … or this Code of Procedure, unless the Parties agree otherwise. This Code shall be administered only by the National Arbitration Forum or Forum.

Sections (E) and (F) of Rule 48 of the Code further provide, in pertinent part, that "[i]f parties are denied the opportunity to arbitrate a dispute, controversy, or Claim before the Forum, the Parties may seek legal and other remedies in accord with the applicable law," and that "[i]n the event of a cancellation of this Code, any Party may seek legal and other remedies regarding any matter upon which an Award or Order has not been entered."

In July 2009, the Minnesota Attorney General filed a complaint against the NAF and related entities alleging violations of the Minnesota Prevention of Consumer Fraud Act and, thereafter, the parties entered into a consent judgment under which the NAF agreed that it would not administer, process, or participate in any consumer arbitration filed on or after July 24, 2009. See *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 116 (746 SE2d 680) (2013) (explaining the details surrounding the NAF consent order).

Wingo died after spending approximately 11 months at the nursing home. On November 21, 2011, Smith and two siblings, Donna Green and Kenneth Anthony Brown, sued Sunbridge and several of its employees individually and as co-executors of their mother's estate, for medical malpractice, ordinary negligence, and wrongful death. Sunbridge moved to stay the litigation and compel arbitration of the dispute pursuant to the arbitration agreement. Smith responded, and argued that the arbitration agreement was void pursuant to the doctrine of impossibility because of the NAF consent order and also because the agreement was unconscionable. Following a hearing on the motion, the trial court denied Sunbridge's motion without explanation, but certified its order for immediate review. After this Court's grant of Sunbridge's application for interlocutory review, this appeal ensued.

4

"In reviewing the trial court's order, we look to see whether the trial court was correct as a matter of law in denying the motion to compel arbitration. Thus, the construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." (Citations omitted.) *Cash In Advance of Florida, Inc. v. Jolley*, 272 Ga. App. 282 (612 SE2d 101) (2005).

1. This Court has previously addressed the issue of whether the FAA mandates arbitration in the event the arbitral forum designation in an agreement is unavailable. In *Miller*, 323 Ga. App. at 120 (2), this Court followed the "integral term versus ancillary logistical concern" test for determining whether an arbitration agreement becomes unenforceable where the arbitral forum designated therein is unavailable for any reason. Under this test,

> [w]here the language of the agreement reflects that the choice of arbitral forum is an integral part of the agreement to arbitrate, then the agreement will be considered void if the forum is unavailable. [W]hen a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act. If, on the other hand, the agreement shows that the selection of a particular forum was merely an ancillary logistical concern, section 5 [of the FAA] will apply and a substitute arbitrator may be named.

5

(Citations and punctuation omitted.) *Miller*, 323 Ga. App. at 119 (2). See *Brown v. ITT Consumer Financial Corp.*, 211 F3d 1217, 1222 (II) (A) (3) (11th Cir. 2000).

Sunbridge maintains that, despite the designation of the NAF as the arbitral forum in the Agreement, use of the NAF was not integral to the contract and that Section 5 of the FAA provides a mechanism for proceeding with arbitration when the chosen forum is no longer available.[4] .

In *Miller*, 323 Ga. App. at 119 (2) this Court concluded that if "the agreement shows that the selection of a particular forum was merely an 'ancillary logistical concern,' section 5 of the FCC will apply and a substitute arbitrator may be named." Conversely, if the selection of a particular forum was integral to the agreement, Section 5 does not apply, and the entire agreement is deemed impossible to enforce.

---

[4] Section 5 of the FAA provides:

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator. 9 USC § 5.

Id. In determining whether the selection of a particular forum was ancillary or integral, we are guided by *Miller*, where we noted that

> [a]n arbitration agreement's express designation of a single arbitration provider weighs in favor of a finding that the designated provider is integral to the agreement to arbitrate. Where the parties have agreed explicitly to settle their disputes before particular arbitration forum, that agreement must control.

(Citations and punctuation omitted.) Id. at 120 (2).

Here, the Arbitration Agreement provides that any disputes between the parties "*shall* be submitted to binding arbitration" and the arbiter "*shall* apply the NAF's Code of Procedure." It also provides that "[p]re-arbitration discovery *shall* be governed by NAF's Code of Procedure." The Agreement further provides that the parties specifically opted out of NAF Rules 45 and 43, and that designation of the use of the NAF Code of Procedure did not mandate use of a NAF administrator. In contrast, the parties did not opt out of Sections E and F of Rule 48, which authorizes parties to seek legal and other remedies in the event the Code of Procedure was canceled.

Likewise, the NAF's Code of Procedure provides that "[t]his Code shall be deemed incorporated by reference in every Arbitration Agreement, which refers to the

7

National Arbitration Forum . . . or this Code of Procedure, unless the Parties agree otherwise. This Code shall be administered only by the National Arbitration Forum. . . ."

Although Sunbridge maintains that this case is distinguishable from *Miller* because this agreement includes a provision that arbitrator need not be an NAF arbitrator, we are not persuaded. Even if a non-NAF arbitrator were appointed, the NAF Code would still apply under the terms of the parties' agreement. And because the NAF Code has in effect been canceled, Rule 48 of the Code authorizes the parties to pursue other remedies.

> [T]he Arbitration Agreement by its terms provides that the procedural law governing the arbitration proceedings would be the NAF Code; that the arbitrators would . . . apply the NAF Code; and that in the absence of the NAF and/or the NAF Code as written, the parties would not be obligated to arbitrate their disputes but instead would be free to seek legal remedies. Accordingly, we find that the availability of the NAF Code of Procedure and, consequently, the availability of NAF as an arbitral forum, are integral to the Arbitration Agreement. To hold otherwise would require us to impose a strained construction on a straightforward agreement. It is far better to interpret the agreement sbased on what is specified, rather than attempt to incorporate other remote rules by reference . . . To appoint a substitute arbitrator, who would have to apply procedural rules other than the NAF Code, would

8

constitute a wholesale revision of the arbitration clause. We therefore find that section 5 of the FAA does not apply in this case, as that law would allow a court to select and impose on the contracting parties a substitute arbitrator inconsistent with the plain terms of their contract. Rather, the unavailability of the NAF and its Code render the Arbitration Agreement impossible to enforce.

(Citations and punctuation omitted.) *Miller*, 323 Ga. App. at 124 (2).

2. Because we have determined that the Agreement is impossible to perform, we not address Sunbridge's remaining enumerations of error.

*Judgment affirmed. Miller, J., concurs. Ray, J., concurs in judgment only.*