[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10603
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00069-JRH-BKE

BEVERLY ENTERPRISES INC.,
GOLDEN GATE NATIONAL SENIOR CARE, LLC,
GGNSC HOLDINGS, LLC,
GGNSC CLINICAL SERVICES, LLC,
GGNSC ADMINISTRATIVE SERVICES, LLC,
GGNSC AUGUSTA WINDERMERE, LLC,
d.b.a. Golden LivingCenter- Windermere,

                                                      Plaintiffs-Appellees,

versus

JUDY CYR,
as Administrator of the Estate of Frankie Campbell,
JUDY CYR,
in her Representative Capacity on Behalf of the Children of Frankie Campbell,

                                                      Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 31, 2015)

Before ED CARNES, Chief Judge, MARCUS, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Plaintiffs (collectively "Golden Gate") operate a nursing facility called GoldenLiving Center - Windermere. Defendant Judy Cyr, acting as attorney-in-fact for her mother Frankie Campbell, signed Golden Gate's arbitration agreement on Campbell's behalf when Campbell was admitted into Windermere. After Campbell died in Windermere's care, Cyr sued Golden Gate in state court under Georgia's wrongful death statute on her own behalf and on behalf of Campbell's other children. See Ga. Code §§ 51-4-2 & 51-4-3 (2010). Golden Gate then filed this action in the federal district court seeking enforcement of the arbitration agreement and moving to compel arbitration. The district court ordered that all of Cyr's claims be arbitrated. This is her appeal of that order, which we review de novo. See In re Checking Account Overdraft Litig., 754 F.3d 1290, 1293 (11th Cir. 2014).

The arbitration agreement Golden Gate drafted contains a provision stating that disputes "shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum [NAF] Code of Procedure, which is hereby incorporated into this agreement." That code provides that "[i]n the event of a cancellation of this Code, any Party may seek legal and other remedies regarding any matter upon which an Award or Order has not been entered." R. 48,

2

NAF Code of Procedure (2006).  In 2009, after a suit by the Minnesota Attorney General, the NAF agreed it would no longer "[i]n any manner participate in" any consumer arbitration (including the type of arbitration at issue here) filed on or after July 24, 2009 — effectively canceling the code of procedure.  See Sunbridge Retirement Care Assocs., LLC. v. Smith, 757 S.E.2d 157, 160 (Ga. Ct. App. 2014). The parties to this case, by incorporating the code into their arbitration agreement, agreed that they could pursue "legal and other remedies" if the code was cancelled. That is what Cyr is doing.

In arguing for arbitration, Golden Gate relies on our decision in Brown v. ITT Consumer Financial Corp., 211 F.3d 1217 (11th Cir. 2000), but that reliance is misplaced.  We held in Brown that when the forum chosen for arbitration is unavailable, the Federal Arbitration Act provides for substitution of another arbitrator unless choice of forum "is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern."  Id. at 1222 (quotation marks omitted); see 9 U.S.C. § 5.  First, Brown is factually distinguishable.  Although it also involved the NAF, which was unavailable as a forum for reasons only hinted at in the opinion, the Brown decision predated the consent decree in which the NAF agreed not to participate in consumer arbitration of the type at issue here and which Georgia courts have recognized cancels the NAF code.  See Sunbridge, 757 S.E.2d at 160.

3

Second, the NAF code is "integral" to the agreement in this case because the agreement explicitly incorporates the NAF code, making the code an essential part of the agreement. The Georgia Court of Appeals has already held as much, interpreting this very agreement against this very plaintiff. Miller v. GGNSC Atlanta, LLC, 746 S.E.2d 680, 685–89 (Ga. Ct. App. 2013). We are not persuaded by Golden Gate's attempts to disown the language it drafted.

Golden Gate argues that we should disregard the holdings of Sunbridge and Miller because they are "specifically related to arbitration, not just contracts in general," which, according to Golden Gate, means that those holdings run afoul of the federal presumption in favor of arbitrability. We are not persuaded. The underlying arbitration agreement is a contract, and that contract is governed by state law. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367–68 (11th Cir. 2005). The Georgia Court of Appeals in Miller and Sunbridge applied general Georgia contract law principles to contracts that happened to be arbitration agreements. See Miller, 746 S.E.2d at 684 ("In deciding the validity of . . . an [arbitration] agreement, therefore, we apply the usual rules of Georgia law regarding the construction and enforcement of contracts."); Sunbridge, 757 S.E.2d at 159–60 (applying rule from Miller). The federal presumption in favor of arbitrability does not prevent that.

4

We **VACATE** the district court's order compelling arbitration and

**REMAND** the case for further proceedings consistent with this opinion.