**Lisa FLAGG, on behalf of herself and all others similarly situated, Plaintiff–Appellee,**

v.

**FIRST PREMIER BANK, a South Dakota State–Chartered Bank, Defendant–Appellant.**

**No. 15–14052 Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Feb. 23, 2016.

Darren T. Kaplan, Darren Kaplan Law Firm, PC, New York, NY, Norman E. Siegel, John Austin Moore, Steve N. Six, Stueve Siegel Hanson, LLP, Kansas City, MO, Jason H. Alperstein, Jeffrey Miles Ostrow, Kopelowitz Ostrow, PA, Fort Lauderdale, FL, Julie Feigeles, Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Miami, FL, Jeffery D. Kaliel, Hassan Zavareei, Tycko & Zavareei, LLP, Washington, DC, for Plaintiff–Appellee.

James P. McCarthy, John Clifford Ekman, Bryan R. Freeman, Lindquist & Vennum, LLP, William James Holley, II, Scott Zweigel, Parker Hudson Rainer & Dobbs, LLP, Atlanta, GA, for Defendant–Appellant.

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Lisa Flagg filed a class-action lawsuit against First Premier Bank. She alleged that First Premier violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, by facilitating the illegal transactions of online payday lenders.

In her payday loan agreement, Ms. Flagg agreed to arbitrate all disputes arising from her loan, and that all such disputes would be resolved "by and under the Code of Procedure of the National Arbitration Forum." The problem is that the National Arbitration Forum ("NAF") has not been accepting consumer arbitration claims since 2009. After the NAF declined Ms. Flagg's request to arbitrate her claim against First Premier, she filed suit in federal district court. First Premier moved to compel arbitration and appoint a substitute for NAF, and to stay or dismiss the proceedings. The district court denied the motion, and First Premier now appeals.

Under § 5 of the Federal Arbitration Act, when the arbitral forum chosen by the parties is unavailable, the court can appoint a substitute arbitrator. *See* 9 U.S.C. § 5; *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1222 (11th Cir.2000). Because arbitration is a matter of contract, however, we have held that an arbitration agreement is only enforceable if the choice of forum is not an integral part of the agreement to arbitrate. *See Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1350 (11th Cir.2014). We must decide, therefore, whether the naming of NAF was integral to the arbitration agreement Ms. Flagg signed. We agree with the district court that it was integral and therefore affirm.

I

Because we write for the parties, we assume familiarity with the underlying facts of the case and recite only what is necessary to resolve this appeal.

First Int'l is an online payday lender, which makes and collects debts on payday loans. These payday loans—generally small loans with high fees that are due in full on the borrower's next "payday"—are illegal in certain states, including Georgia. A borrower obtaining a payday loan from an online lender must usually sign an Automated Clearing House ("ACH") authorization agreement, which gives the lender authority to electronically debit and credit loan transactions. The ACH Network is the nation's secure electronic payment transfer network. The debit and credit transactions between borrowers and lenders such as First Int'l are performed by banks that belong to the ACH Network, including First Premier. These banks are required to do extensive due diligence prior to entering into an agreement with a merchant seeking to electronically process transactions on the ACH Network.

According to Ms. Flagg's complaint, First Premier engaged in a scheme to allow payday lenders to make illegal payday loan credits and debits using the ACH Network. First Premier allegedly profited from its participation in this scheme by charging payday lenders higher than customary fees to originate transactions on the ACH Network.

In August of 2012, Ms. Flagg received a $250 payday loan from First Int'l. She was required to pay back $335.00—the $250 principal and an $85 fee—within 22 days. Ms. Flagg provided an ACH authorization for her checking account with JPMorgan Chase Bank, N.A. to obtain the loan. The loan agreement stated that the nominal interest rate on the loan was 899.46%. And, even if timely paid off, the payday loans offered by First Int'l automatically renew unless the borrower affirmatively declines the renewal option at least three

business days before the loan due date. As a result, First Int'l twice debited $335.00 from Ms. Flagg's checking account in Georgia through the ACH Network in September and October of 2012.

The payday loan agreement that Ms. Flagg signed contained an arbitration provision that reads as follows:

**AGREEMENT TO ARBITRATE ALL DISPUTES:** By signing below and to induce us, (First International SRS), to process your application for a loan, you and we agree that any and all claims, disputes, or controversies that we or our services [sic] or agents have against you or that you have against us, our services [sic], agents, directors, officers and employees. That arises out of your application for one or more loans, the Loan Agreements that govern your repayment obligations, the loan for which you are applying or any other loan that we previously made or later makes [sic] to you, this Agreement To Arbitrate All Disputes, collection of the loan or loans, or alleging fraud or misrepresentation, whether under the common law or pursuant to federal or state stature [sic] or regulation, or otherwise, including disputes as to the matters subject to arbitration, *shall* be resolved by a binding individual (and not class) arbitration *by and under the Code of Procedure of the National Arbitration Forum (NAF) in effect at the time the claim is filed.* THEREFORE, THE ARBITATION [sic] SHALL NOT CONDUCT CLASS ARBITRATION. THAT IS: THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. This Agreement to Arbitrate All Disputes shall apply no matter by whom or against whom the claim is filled [sic].

Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at www.arb-forum.com, or National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405. If you are unable to pay costs at arbitration, your arbitration fees may be waived by the NAF....

(emphasis added). Ms. Flagg signed the agreement in August of 2012. But the NAF has not been accepting consumer cases for arbitration since July of 2009, when it settled with Minnesota's Attorney General, who had sued the NAF over its affiliations with pro-creditor groups.

On January 5, 2015, counsel for Ms. Flagg sent a letter to the NAF attempting to initiate arbitration against First Int'l and First Premier in accordance with the NAF Code and the terms of the First Int'l loan agreement. Three days later, on January 8, counsel received a response letter from the NAF explaining that it is no longer able to accept consumer arbitration claims and declining to initiate arbitration.

Because the NAF was unavailable, Ms. Flagg filed suit in federal court on January 30, 2015. First Premier asked the district court to compel arbitration, arguing that § 5 of the FAA requires the appointment of a substitute for NAF. On August 26, 2015, the district court denied First Premier's motion.

**II**

We review *de novo* a district court's interpretation of an agreement to arbitrate (and whether it binds the parties to arbitrate), but we accept the district court's findings of fact unless they are clearly erroneous. *See Multi–Fin. Sec. Corp. v. King,* 386 F.3d 1364, 1366 (11th Cir.2004).

The unavailability of the parties' chosen forum precludes arbitration if "the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." *Inetianbor*, 768 F.3d at 1349–50. "To determine whether the forum selection clause is integral, we must consider how important the term was to one or both of the parties at the time they entered into the agreement." *Id.* at 1350.

We turn to the text of the arbitration provision to determine the parties' intent. The provision specifies that disputes "shall" be resolved by the NAF under its Code in effect at the time of the claim, and does not appear to contemplate arbitration before any other forum. Indeed, despite the fact that the NAF had stopped accepting consumer arbitration cases more than three years before Ms. Flagg applied for her payday loan, First Int'l continued to use arbitration agreements designating the NAF and made no provision for the appointment of an alternate arbitrator. This chronology suggests that the designation of the NAF was integral to First Int'l and counsels against a court stepping in to appoint a different arbitral forum.

The provision also states that disputes shall be resolved under the NAF's Code of Procedure. In part, that Code provides: "If Parties are denied the opportunity to arbitrate a dispute, controversy or Claim before the Forum, the Parties may seek legal and other remedies in accord with applicable law." Relying on our unpublished decision in *Beverly Enters., Inc. v. Cyr*, 608 Fed.Appx. 924 (11th Cir.2015), the district court concluded that the specific references to the NAF's Code of Procedure indicated that the NAF was integral to the arbitration agreement.[1]

In arguing for arbitration with a substitute arbitral forum, First Premier relies on our decision in *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000), but that reliance is misplaced. The arbitration provision in *Brown* provided only that claims were to be "resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum," but did not explicitly designate an arbitral forum. In this case, the arbitration agreement specifically designates the NAF as the arbitral forum and mentions the chosen forum throughout the agreement. *See Inetianbor*, 768 F.3d at 1351 ("Unlike in *Brown*, the arbitration agreements we consider here select not just the rules of procedure, but also the arbitral forum. Beyond that, unlike in *Brown*, here the chosen arbitral forum is referenced throughout the arbitration agreement. As a result, *Brown* in no way compels us to reach the same outcome here."). Here, the NAF pervaded the arbitration provision. It was designated as the exclusive forum and its Code of Procedure was selected to govern all claims. The provision directed consumers to file their claims with and obtain required forms from any NAF office, online at the NAF website, or by sending a request to the NAF's mailing address. Furthermore, as we noted in *Beverly Enters.*, 608 Fed.Appx. at 925, the *Brown* decision predated the consent decree in which the NAF agreed not to participate in consumer arbitrations and which Georgia courts have recognized cancels the NAF Code in such matters. *See Sunbridge Ret. Care Assocs., LLC v. Smith*, 326 Ga.App. 550, 757 S.E.2d 157, 160 (2014). Given these differences, we do not think *Brown* directs us to compel arbitration.

---

1. In *Beverly Enters.*, we held that the selection of the NAF was an integral part of the parties' agreement to arbitrate. Although the *Beverly* *Enters.* decision is not binding, we—like the district court—find its reasoning persuasive here.

## III

Because the choice of the NAF as the arbitral forum was an integral part of the agreement to arbitrate, we conclude that the district court properly denied First Premier's motion to compel arbitration and appoint a substitute for NAF, and to stay or dismiss the proceedings.

**AFFIRMED.**